19-1015 Frasier v. Evans Good morning. May it please the Court, I'm David Cooperstein on behalf of the defendants. If possible, I'd like to reserve three minutes for rebuttal. The District Court committed two main errors in its qualified immunity analysis. First, it did not identify the First Amendment right at issue with the requisite level of specificity. And second, it placed the burden of identifying clearly established law on the defendant officers rather than on the plaintiff, Mr. Frasier. Turning first to the First Amendment, there has been a tremendous amount of discussion both in the briefing and in the District Court's opinion regarding whether there is a clearly established right to record police officers. However, that is not the issue that should decide this appeal. The template for this court's decision was set forth by the Supreme Court in Reichel v. Howard's. In that decision, the court found that the previous case Hartman, which imposed a probable cause requirement on retaliatory prosecution claims, could reasonably read to extend to arrests. In reaching that conclusion, the court made two very significant findings to this appeal. First, that the right at issue was the right to be free from retaliatory arrests supported by probable cause. And the court found that there was no such right. And second, in reaching its conclusion, the court found that a police officer's wholly legitimate consideration of speech, namely speech as evidence, could be seen to sever any connection between an officer's retaliatory animus and a plaintiff's injury. Applying those principles here, we have a district court opinion that found that the recording possessed by Mr. Frazier on his tablet was evidence relevant to the officer's criminal investigation. And two, that the officers possessed reasonable suspicion to believe that Frazier had committed a crime by falsely denying that he possessed both the tablet and the recording after the officers had seen him holding that tablet and taking that recording. Thus, correctly framed, the question here is that whether in 2014, there was a clearly established right to be free from alleged retaliatory questioning, detention, and or search where an officer had reasonable suspicion to believe that the suspect had possessed relevant evidence but had falsely denied possessing such in violation of the law. There is no such right, just as there was not in Reichle. The district court, unfortunately, did not address Reichle. Instead, it found in a footnote that defendants had failed to proffer authority extending Hartman's rule to arrests. This reverses the qualified immunity burden. It is not defendants' burden to come forward with jurisprudence extending a legal concept. It is plaintiff's burden to come forth with appellate president clearly establishing that they possessed a right. Reichle makes that polluted and the result here should be the same as that in Reichle, only with the, instead of a retaliatory arrest, the subject being these other investigatory steps, questioning, detention, and search, supported by probable cause. There is no such right in 2014. There certainly wasn't, and there still isn't today in 2019. The recent 2019 Supreme Court case of Nieves only strengthens the force of that argument. There, the court explicitly found that in order to state a First Amendment retaliatory arrest claim, a plaintiff must prove the absence of probable cause in most instances. An officer could reasonably look at Reichle, Lozman, and now Nieves, and think that where they take investigatory actions that are supported by an objective, factual basis, they would be immune from a First Amendment retaliation claim. And what about the qualification in Nieves related to the jaywalking hypothetical that they gave? Why is it not, why is it so clear that the officer ordinarily would have arrested or in this instance detained somebody for filming when in fact they had testified that they thought they couldn't do that? That they had been trained not to do that? So, Nieves first is a 2019 case delineating. You're the one who's talking about it. And I point out only that that enforces the principle from Reichle, Your Honor. But that could not be used to impose liability on a 2014 retaliatory search. Further, that equal protection style showing that the court referred to Nieves would not be satisfied here, nor was that issue reached here. We have, in fact, Your Honor, to turn to that issue of the officer's testimony and regarding their training and policy, plaintiffs effectively understand, plaintiff understands he cannot find appellate law supporting his contention, so we attempt to premise it on the officer's subjective understanding of their training. Their training to the effect that citizens are allowed to record them generally. Even if that training could create a clearly established constitutional right, which it cannot, it doesn't touch upon the situation here. These officers have a well-settled obligation to, in investigating a criminal act, to ascertain the existence of evidence and to interview available witnesses. The criminal act only arose when they came up to them trying to get the tape, when he was trying to tape them. When they were told that they were trained that the public has a first amendment right to record you. So, I mean, the criminal act came when he lied, when they came up, we can have a chicken and egg thing, but the reality is, he was just doing what they were trained to understand he had every right to do, right? Not exactly, Your Honor, no. Mr. Frazier completed his recording uninhibited, and then subsequently the officers approached him and asked him to fill out a witness statement and if he'd be willing to provide the recording. Legitimate investigative steps, nothing about their training or the law. What did they need the recording for? So this recording, if Your Honor's watched the video, will understand. It showed an individual attempting to swallow narcotics while resisting arrest. Both of those things are criminal acts. I think it is beyond reasonable dispute that that recording would be relevant to the criminal investigation and prosecution of that individual. So the officers unquestionably had a right, and as the district court found, to question Mr. Frazier, ask him for the recording, that he then chose to His possession of the tablet and its existence changes this case from a standard, was he allowed to record or not, to an entirely different situation. That situation contemplated in Reichel. Additionally, Your Honor, if you're going to- Did they believe, did the officers believe, if we're talking about subjective intent, whether it's relevant or not, did they believe they had a right to reasonably detain him? So each officer had his own knowledge. And I thought every answer was no, right? Not exactly, no, Your Honor. Okay. The supervisor, Sergeant Bothwell, when he first became aware of what Mr. Frazier was claiming, which was immediately at the inception of that group conversation, the heated conversation that's referred to, he believed that Frazier was being untruthful. And thought that he may have grounds to detain or arrest him, but ultimately decided not to, would be the correct. The other officers, the initial officer involved in interviewing Frazier Evans, he thought it was strange and didn't make sense, but didn't believe Frazier was untruthful. The other officers lacked enough knowledge to even understand what was going on, because they weren't privy to any of that information. So it's different for each officer. And the standard should, in fact, have taken that into account. The district court instead used collective findings in that regard, which leaves the appellate record a little bit lacking. But if the court looks to the testimony, that's what it will see. In any event, Your Honor, the officer's subjective understanding of their training and the law should not be taken into account in determining whether the law was clearly established. There are a multitude of decisions from this court and the Supreme Court. Delineating the clearly established law standard is one of a pure question of law regarding appellate precedent. To deviate from that will essentially undermine qualified immunity almost absolutely in that in every single case moving forward, a plaintiff will claim that they cannot answer the qualified immunity question raised in a Rule 12 motion. Because they require discovery regarding a defendant's knowledge and intent and policy. That would be directly contrary to the long standing rule that qualified immunity should be raised and decided early. Go ahead. The issue of a constitutional violation itself didn't really play a role in the district court decision below. In other words, whether there in fact had been a First Amendment violation. Was the officers, did your clients concede that there was a First Amendment violation? Then just play on the clearly established law or how did that play out? No, Your Honor. So we have never contested that there is a general First Amendment right to record. Okay. We haven't conceded that there was a First Amendment violation under the facts of this case. That we argued against. Okay, so you accept the premise that there was a First Amendment right to record and the fact that there might not have been a First Amendment violation here stems from the investigative function related to the potential criminal offense. Yes, and the, yes, yes, Your Honor. Okay. Well, do we have a dispute as to material issues? Factual issues? Does the plaintiff say one thing and the officers say another? Yes, as to some aspects of this encounter. Well, in that situation, do we even have jurisdiction to entertain the appeal? I frankly did not see any First Amendment recording violation. And I think it swings more on to was he arrested? Was he unlawfully searched? That type of thing, which is going to depend on facts that have not been established. We've ceded the view most favorable to plaintiffs. So to the extent there's a dispute, that doesn't preclude this court's jurisdiction. Well, if you have conceded the facts as alleged by the defendant, then they have alleged a violation, have they not? No, Your Honor, certainly not a violation of clearly established law, which is a pure legal inquiry and the presence of probable cause prevents that are here reasonable suspicion and arguable probable cause as well would prevent that. So the court clearly has jurisdiction to entertain that aspect of the case. As to the court's application of the First Amendment retaliation factors that this court described in the AMV Holmes case, I would also argue that this court could reach that, that the court's analysis was deficient in compared to the requirements that this court set forth in AMV Holmes. Especially, well, with respect to the third factor having to do with retaliatory motive, requiring individual findings as to each defendant, and the court omitted that. But I'd like to briefly turn to conspiracy. Here, the district court found that the officer's presence during the 32nd heated conversations where officers demanded that Frazier produce his tablet constituted a conspiracy to violate his constitutional rights. Frazier, for his part, admits that he had been deliberately untruthful up until that point and during the conversation was caught in a lie. The district court recognized that the defendant sought qualified immunity on that conspiracy claim but did not reach the clearly established law question. This court possesses jurisdiction to do so in reaching the substance of that claim. It should find that even if the objective to convince Frazier to relinquish his tablet was shared by the officers at the inception of that conversation, despite there being no communication or coordination amongst the officers prior to then, that itself is not a clearly established violation of the law. Is that because of Ziegler? Ziegler is one part of that, but I would also state that officers confronted with a witness who is falsely denying that they possess evidence, that the officers know they possess, the law is not clearly established that under those factual circumstances, they could not confront him in the manner they did. Okay, can I break that down, both of those component parts? On the second part of your answer, is that essentially another way of saying that your argument that you previously explained under Reichler versus Howard's not only would foreclose or would entitle the officers to qualified immunity on the First Amendment claim, on the First Amendment retaliation claim, but also on the conspiracy to violate the First Amendment? I wouldn't say it's the same. They're similar reasoning. I'm saying that even if the officers wanted to get Frazier's tablet and he'd been lying about it up until that point, A, the tablet contained evidence relevant to their investigation, and B, they're facing a prevaricating suspect, the law does not prevent officers in a group setting confronting them about their untruth. It wouldn't do that as a matter of clearly established law is the point you're making, right? Yes, Your Honor. But even going, but on the constitutional question itself, which was the one that I believe the court relied upon, I mean, the reality is you have them in this 30-second clip surrounding him, and you're still going to have to determine that they, it's not that, is it not correct that it wasn't, it isn't just the intent to get the tablet, it's the intent to get the tablet to deprive him of his First Amendment right to record. Those are two different things, right? In other words, the judge held that they had reasonable suspicion to detain him, to investigate about his lying. That could very well encompass getting the tablet, couldn't it? Certainly, Your Honor, and they would be permitted. And so the point is, it's not just a question of whether they were surrounding him saying, give me the tablet, it's a question of whether there could be some showing that they conspired to try to infringe upon his right to record by getting the tablet. And I would, yes, Your Honor, and I would add that that would require additional factual inferences that are clearly unsupported here. But even if that was the case, Your Honor, it is not clearly, as to the First Amendment aspect, not clearly established by Reichle that that's impermissible, and as to the Fourth Amendment aspect, the Supreme Court recently in D.C. v. Wesby reiterated that when faced with prevaricating witness, untruthfulness and evasiveness can support probable cause. Is the Fourth Amendment even in play here? It is, Your Honor. The court found that there was sufficient facts to find that the officers conspired to violate Frazier's Fourth Amendment rights. But they had held, but the court had held that they had a right to detain him and investigate. Agreed. So? I think what you're saying is, Your Honor, what I'm trying to say. But was the question, though, whether they were going to try to destroy what the camera had depicted? And that's a dispute on that. They said, no, we weren't going to do that. We just wanted to see what it was. The district court resolved that dispute in favor of defense. How could he? It's a factual dispute. Based on the forensic evidence indicating that the recording had never been deleted, despite the officer having the opportunity to do so. Well, I know, but isn't the contention that that's what they were trying to do, was to get the tablet and delete the recording? That was plaintiff's conspiracy theory. But there's been no evidence to support it in the district court's evaluation. The evidence supports it. If I could leave with one final thought, since I'm out of time. These officers were faced with an outwardly cooperative, but ultimately deceptive witness who deliberately and unlawfully misled them about the existence of evidence. The law is not at all clear as to how the First Amendment standard or the Section 1983 conspiracy standard should be applied under these highly unique facts. Thank you. Yes, yes. Don't leave yet. Sorry, I'm sorry. I didn't think you wanted to hear anything else. They might not, but I did. I just want to address one issue that I didn't see the answer to this question in the briefs. How can Ziegler affect whether there's a clearly established violation of law when it postdated the events? And at the time of the events, we had Brewer, a published precedential opinion in our circuit. How can that be supplanted by a Supreme Court opinion that obviously had not even been in existence yet? So there is pretty significant jurisprudence indicating that even where law becomes unclearly established after the events, that controls. I don't have that in front of me. I could provide that through supplement authority if the court would like. But the more interesting question posed by Your Honor is once a law right's been clearly established within a circuit, how does a Supreme Court decision unclearly establish it? I would say that Ziegler, by its use of broad terminology, it noted the circuit split and said that an officer viewing that could reasonably understand that they can't be found liable for conspiracy based on conversations amongst officers of their same agency. The court did not attempt to cabin that to any particular circuit or rely on circuit precedent in reaching that. Nor would it because it's the Supreme Court. It's talking about what's clearly established from on high. But that the officers aren't operating on high, are they? They're operating in our circuit. They are, Your Honor. But if on high something is not clearly established, then that controls down below. And I think that that is how these, when the Supreme Court determines that an issue is not clearly established, like it did in Reichel despite there being circuit precedents that were contrary to that, it is no longer clearly established anywhere. We'll think about it. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Good morning. Let me start with Nieves v. Spartlett. You want to pull the microphone over, please? There you go. Let me start with Nieves v. Spartlett. Nieves does not apply to this case because Mr. Frazier was not arrested. This is not a retaliatory arrest case. And in order to apply Nieves v. Spartlett to this case, this Court would have to be overruling the standards set forth in Mount Healthy as well as the decades of precedent that have come after Mount Healthy in this Court's own precedents. If Reitler v. Howards said that there can be no claim, no viable liability for retaliatory arrest if there is probable cause, doesn't that lead a fortiori to the conclusion that if there is reasonable suspicion, there cannot be a liability for a retaliatory detention if there is reasonable suspicion? But this case is not limited to a retaliatory detention. This case is also about an illegal search, an illegal search that Defendant Evans performed on Levi Frazier's tablet, which he did not challenge below with a motion for summary judgment because there is a genuine dispute of material fact. And in Riley v. California, the Supreme Court said in that case that you have to, in order to conduct a search of a cell phone incident to arrest, and remember there wasn't even an arrest here, you have to have a warrant. And so the defendants... Well, wouldn't that pertain to the retaliation based on the Fourth Amendment but not retaliation based on the First Amendment? I'm not sure I understand. Well, there's two separate claims, right? Right. Retaliation based on the violation of the First Amendment and retaliation based on the Fourth Amendment. Riley's a Fourth Amendment case, and you're talking about the illegality of the search. Well, the illegality of the search wouldn't have anything to do with the First Amendment violation. It would have to do with the Fourth Amendment violation. Well, the question is whether the officer searched his tablet in retaliation for him recording them in public performing their duties. And so that's how the retaliatory search is related to the First Amendment claim. And I'll also note two other things, which make the whole line of cases with Nieves and Howards v. Reichel inapplicable. The officers all admitted, as Judge Holmes pointed out, that they did not have reasonable suspicion or probable cause to detain or arrest Mr. Frazier. Well, they saw him taking the recording of a crime in progress, and he was helping them at one point. Now, why didn't they have a right to at least verify that there was a recording made that could be utilized in a subsequent trial? Because the Fourth Amendment does not allow the... Well, it was absolute proof. I mean, they knew exactly what they were looking. They wanted to see what he had done. They can't... The Supreme Court has unequivocally said that you cannot search an electronic device without a warrant. Well, it depends on the circumstances. That's true. And so even in the situation of an arrestee, and remember, there are circumstances surrounding an arrest where an officer might have to ensure officer safety or even circumstances concerning whether or not there would be a likelihood of remote erasure. The Supreme Court considered all of those things in the Riley case. And so what we're saying that case stands for is the fact that there is no justification here for the retaliatory search. And the point of it is this. Going back to Judge Bacharach's point, Riley is a Fourth Amendment case. All right, fine. We're talking about First Amendment retaliation claims, right? Right. Okay. And they're not... And Evan's search is not even before us, is it? Evan... Well, the search of the tablet is not before the court, no. So why do you keep talking about it? Why is it relevant? The relevance is that the district court found a factual dispute with respect to the defendant officer's motives. So under the First Amendment claim, the question is whether or not there was a substantial motive to retaliate. And this court has no jurisdiction to review the district court's conclusions that the facts would allow a reasonable jury to conclude that there was a First Amendment violation or any of the inferences from those facts. And to the extent that the defendant's entire argument about whether the law was clearly established is based around assuming facts in their favor, this court does not have jurisdiction to review that. Well, Paul, the district court engaged in a lot of collective weaves. The law, you know, and that reminds me of our Paul versus Thomas case. It reminds me of other cases that we have. I guess it's A.H. Holmes or whatever that case was, A.M. Holmes. The reality is you have to look at individual intent for retaliation. The district court didn't do that. I mean, so the point is that as a legal error, and that's what it was in Paul's versus Thomas, and because the court committed a legal error in collectively analyzing the activities of the individuals involved, we were supposed to look at the record and determine whether in fact there was a basis for a constitutional violation. If the court commits the same legal error here, you bet we can look at the facts. You bet we can determine whether they are constitutionally sufficient because we did it in Paul's versus Thomas. We can do it here. The district court analyzed each of the officer's actions. With respect to Defendant Evans, for instance, Evans was the one who detained Frazier, held onto his I.D., told him, threatened him with arrest at the beginning of their interaction, saying we can do this the easy way or the hard way, and then all the officers are seen on video questioning Mr. Frazier. Are you talking about the heated discussion? Yes. We don't know that that was a questioning. All we know is that your client said that they demanded the tape. How is that questioning? That is his version of the facts, which this court has no jurisdiction to review. It is his version of the facts in which if you look at that order, there is no discussion about what each individual who is in that encircled group thought, and the reality is Paul's versus Thomas makes it very clear that if you are going to hold conspirators responsible, you're going to have to give us at least two people who conspired. Sitting around encircling him tells us nothing, and it particularly tells us nothing if, as the district court found, they had a reasonable suspicion to detain him. But several of the officers admitted that they didn't even know he had written a written statement. Isn't it an interesting theme here that what the officers think, with all due respect to them, is irrelevant? Who cares what they think? That's not what this analysis is about, is it? I mean, we're looking at objectively what the law would hold, particularly as it relates to clearly established law. The First Amendment question is a question of intent, of their subjective motivations. That has been the law of this circuit and the Supreme Court for decades, and the Supreme Court said in Johnson versus Jones that intent is a factual question that this court does not have jurisdiction to review. And so let me move on to the First Amendment question. All of the circuits that have been presented with this question have decided that the First Amendment protects the right of the public to record police officers publicly performing their duties. But nobody stopped them from recording anything. That's true. Nobody stopped him while he was recording, but the question is there is a dispute of fact over whether they retaliated against him for that recording afterwards. They were busy with the arrest while they were arresting the guy. So if their position is we were just trying to gather evidence and your client's position is that they were trying to retaliate, is that where you get the question of fact? That's right. The question is their intent and what they were trying to do. The defendants characterize it as we're investigating, we're looking for evidence. I mean, the evidence is disputed because, first of all, they had no interest in the evidence after they all realized that he did, in fact, have a recording. There was no attempt to get it at any point afterwards. And so that is the question of fact, that this court does not have jurisdiction to review. And if I understand correctly, is the episode that you're in particular talking about is the time in which they were encircling him and which your client says they were demanding the district court called it demanding the tablet. And the district court said a jury could reasonably infer from that, you know, that you've got the conspiracy but you also have the retaliation. The district court could reasonably infer that they were trying to retaliate against him. Is that what we're talking about or are we talking about something else? That is true as to all of the officers, but with respect to Defendant Evans in particular, who had the most interaction with Mr. Frazier, he was the one who held on to his ID. He was the one who threatened him with arrest before he even wrote the written statement. And so when you look at the reasoning behind Nieves, and they're saying that probable cause to have an arrest may shed light on what the motives are. It may weigh one way or another. That has no bearing in this analysis when you're talking about retaliatory acts that began before they could possibly have had probable cause to arrest him or reasonable suspicion to detain him. It also sheds no light on the retaliatory search of the tablet because as the Supreme Court has set out the rules for searching electronic devices, the officers had no justification for doing so and they make no attempt to justify doing so. And so with respect to Defendant Evans in particular, he was the one who searched his tablet while they were behind that truck. And so the question is a question of fact over what is the reason that he did that. Now, would you – sorry. Yes. I didn't mean to interrupt your answer, but I thought you were finished. In any event, the state of mind seems to come in in two places. One is on the first element of a retaliation claim and also with regard to the somewhat unrelated issue of whether or not the officer's actual knowledge based on the departmental policies would have precluded qualified immunity. Now, with your answer to Judge Holmes, I understand it with regard to the first prong of qualified immunity on the retaliation – but with regard to the clearly established prong, why would the officer's subjective intent or their knowledge have any bearing on the clearly established prong? Well, first of all, we think you could affirm the district court's basis for rejecting qualified immunity, but of course, as we argue in our briefs, the law was clearly established through a robust consensus of persuasive authority from four circuits that existed before 2014. But even beyond that, if you were to look at what the district court held, the fact that they were trained on it and that the DPD trained on it as far back as 2007, trained that the public has a First Amendment right to record, only reflects how clearly established the law was. Well, I mean, those are maybe two different things. What I'm trying to home in on is whether or not the officer's intent or what was in their brain, whether that could bear on the clearly established prong. I don't think it can. So I think the district judge was clearly incorrect on that, but I'm asking that. It really is a question. Tell me why I'm wrong about that. You're not wrong, but there's a difference between subjective intent and knowledge. And if you look at the majority opinion in Harlow, it's not just about Brennan's concurrence, where he says officers who actually know what the law is aren't entitled to qualified immunity. This is in the majority opinion. And what the majority opinion in Harlow says is that we are excising the question of good faith, bad faith, subjective intent from the qualified immunity analysis, but what the officers know is still relevant. And so clearly established law was created as a proxy for what the officers knew. All right. Well, let me ask you about this. It's not a quiz, because I don't know that it was cited in the briefing, but Apodaca versus Ramish, are you familiar with it? Somewhat, Your Honor. Well, the first two sentences start, third, the plaintiff suggests that a defendant's knowledge affects the availability of qualified immunity. We reject this suggestion, for there is a single standard, whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted. So my reading of Apodaca versus Ramish, which obviously was long after Harlow was decided, is that the officer's knowledge really doesn't bear on the clearly established wrong. But that is a question, not a statement. I mean, I think there are two separate ways of getting to the same place. And I'll note that this language about officers not being entitled to qualified immunity if they're incompetent or knowingly violate the law, it has been repeated by the Supreme Court in numerous cases since that standard was set out in Malley. And so even if the court were to affirm on other grounds and find that the law was clearly established because there was the weight of authority from four other circuits, I submit that the law was clearly established because there were four indistinguishable cases involving bystanders recording the police while publicly performing their duties. Did any of those involve the existence of reasonable suspicion and a claim that was predicated on a retaliatory detention when there was reasonable suspicion? Two involved arrests. In Glick, the guy was arrested for filming the officers arresting somebody on the Boston Commons. In Fordyce, the person was prevented from recording, then she started recording again, and then she was arrested. And there was a finding of reasonable suspicion in those cases? Well, they used the First Amendment standard that was set out in Mount Healthy, which is the standard that applies here. I mean, of course, Nevis has been decided since then, so it wouldn't apply to arrest cases. But again, this is not an arrest case. Well, you would have no problem then if the officer had just said, OK, we're going to take your computer, we're going to go to the court, get a warrant, look at it, see what's on it because we need to verify that we didn't use unnecessary force or whatever. Actually, they could. They could. And the DPD policy itself on this topic says that they can get approval for a seizure but without searching. Well, they could seize it first and then seek the approval. Correct. Correct. I thought there was a part of the retaliation that relates to detention. Does it not? That is one of the things that we were saying is one of the retaliatory actions, but that would not fully explain the retaliatory actions here because there's the search and there's the threats. I would like to conclude by saying that even if the court found that the law was clearly established, this presents the factors set forth by the Supreme Court in Pearson for why the court should decide the constitutional question all exist here. It's uncontested that members of the public have a First Amendment right to record. It's not a difficult question. Six circuits have gone one way. And it would establish controlling authority for this circuit that would provide further guidance to officers in addition to what they already have from the weight of authority. Thank you. Your time's up, right? Yes. Case is submitted. Thank you.